IN THE SUPREME COURT OF NORTH CAROLINA

No. 278PA15

Filed 21 December 2016

STATE OF NORTH CAROLINA

v.

DAVID MATTHEW LOWE

On discretionary review upon separate petitions by the State and defendant pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 774 S.E.2d 893 (2015), reversing judgments entered on 8 July 2014 by Judge Reuben F. Young in Superior Court, Wake County, and remanding for further proceedings. Heard in the Supreme Court on 31 August 2016.

> *Roy Cooper, Attorney General, by Derrick C. Mertz, Special Deputy Attorney General, for the State-appellant/appellee.*

> *M. Gordon Widenhouse, Jr. for defendant-appellant/appellee.*

HUDSON, Justice.

Here we are asked to consider the validity of a search warrant authorizing a search of the premises on which defendant was arrested, and whether the search of a vehicle located on those premises was within the scope of the warrant. We conclude that the warrant was supported by probable cause and therefore affirm that part of the decision of the Court of Appeals. However, we conclude that the search of the

subject rental car did not exceed the scope of the warrant and thus reverse that part of the decision below.

Defendant David Matthew Lowe was indicted on 2 December 2013 in Wake County for two counts of trafficking in MDMA under N.C.G.S. § 90-95(h)(4) and one count of possession of LSD with intent to sell or deliver under N.C.G.S. § 90-95(a)(1). The trial court denied defendant's pretrial motions to quash the search warrant for a residence where defendant was a visitor at the time the warrant was executed, and to suppress evidence seized from the residence and from a rental car used by defendant and his girlfriend that was parked in the driveway of the target residence at the time of the search. On 8 July 2014, defendant pleaded guilty to the controlled substances violations while reserving the right to appeal the trial court's denial of his motions. On appeal, the Court of Appeals unanimously affirmed the search of the residence, holding that the warrant was supported by probable cause, but reversed the search of the rental car on the basis that the vehicle search exceeded the scope of the warrant. *State v. Lowe*, ___ N.C. App. ___, 774 S.E.2d 893 (2015).

Background

On 24 September 2013, Detective K.J. Barber of the Raleigh Police Department obtained a search warrant from the local magistrate for 529 Ashebrook Drive in Raleigh. Detective Barber filed an affidavit in support of the search warrant in which he swore to the following facts:

In September of 2013, I received information that a subject

that goes by the name "Mike T" was selling, using and storing narcotics at 529 Ashbrooke [sic] Dr. Through investigative means, I was able to identify Terrence Michael Turner as a possible suspect.

Terrence Michael [T]urner, AKA: Michael Cooper Turner has been charged with PWISD Methylenedioxy-methamphetamine, Possess Dimethyltryptamine, PWISD Psylocybin, PWISD Cocaine, Possess Heroin, PWIMSD Schedule I, Maintain a Vehicle/Dwelling, Trafficking in MDMA, Conspire to sell Schedule I and other drug violations dating back to 2001.

On 9/24/2013 I conducted a refuse investigation at 529 Ashebrook Dr. St [sic] Raleigh, NC 27609. The 96 gallon City of Raleigh refuse container was at the curb line in front of 529 Ashebrook Dr.

Detective Ladd removed one bag of refuse from the 96 gallon container and we took it to a secured location for further inspection. Inside the bag of refuse, I located correspondence to Michael Turner of 529 Ashebrook Dr. Raleigh, NC 27600 [sic], also in this bag of refuse, I located a small amount of marijuana residue in a fast food bag, which tested positive as marijuana utilizing a Sirche # 8 field test kit.

Based on the above stated facts coupled with my training and experience it is my reasonable belief that illegal narcotics are being used and/or sold from inside this location. Based on the above, I respectfully request this warrant be issued.

The warrant authorized the search of the "premises, vehicle, person and other place or item described in the application for the property and person in question." On the following day, 25 September 2013, Detective Barber and other officers executed a search of the residence.

When the officers arrived on scene, they observed a Volkswagen rental car parked in the driveway. Detective Barber was aware that Mr. Turner had an Infinity registered in his name, as well as an outdated registration for a Toyota, but neither of those vehicles was present at the scene. Detective Barber had never seen the Volkswagen rental car before. Inside the residence officers encountered defendant and his girlfriend, Margaret Doctors, who were overnight guests of Mr. Turner. A search of the residence revealed 853 grams of marijuana in the home, as well as 14 grams of crushed MDMA in the room that had been occupied by defendant and Ms. Doctors. Detective Barber testified, without further elaboration, that "once we entered the house on the search warrant, we were able to determine that the vehicle was being operated by [defendant] and Ms. Doctors." After searching the house, officers searched the rental car and discovered in the trunk defendant's book bag and identifying documents, 360 dosage units of MDMA, 10 strips of LSD, and $6000 in U.S. currency.

On 11 April 2014, defendant filed pretrial motions to quash the search warrant and to suppress the evidence seized from the residence and the rental car, as well as incriminating statements he made afterwards. After hearing the motions on 7 and 8 July 2014, the trial court denied defendant's motions on 8 July 2014. Defendant pleaded guilty to all charges but reserved the right to appeal the trial court's denial of his motion to suppress evidence. The trial court sentenced defendant to two concurrent terms of thirty-five to fifty-one months of imprisonment for trafficking in

MDMA by possession, and a consecutive term of seven to eighteen months for possession of LSD with intent to sell or deliver. Defendant appealed to the Court of Appeals.

At the Court of Appeals, defendant first argued that the search warrant was not supported by probable cause and that any evidence seized from the ensuing search should have been suppressed. *Lowe*, ___ N.C. App. at ___, 774 S.E.2d at 896. The court disagreed, holding that the totality of the circumstances—the marijuana discovered in the trash, in conjunction with Turner's history of drug-related arrests and the anonymous tip that Turner was "selling, using and storing" narcotics in his home—"formed a substantial basis to conclude that probable cause existed to search his home for the presence of contraband or other evidence." *Id.* at ___, 774 S.E.2d at 898-99.

Defendant next argued that the search of the rental car parked in Turner's driveway exceeded the scope of the warrant issued to search Turner's residence. *Id.* at ___, 774 S.E.2d at 899. The Court of Appeals agreed. The court recognized that "[t]here is long-standing precedent in North Carolina and other jurisdictions that, *'[a]s a general rule*, "if a search warrant validly describes the premises to be searched, a car on the premises may be searched even though the warrant contains no description of the car." ' " *Id.* at ___, 774 S.E.2d at 899 (second alteration in original) (emphasis added) (quoting *State v. Courtright*, 60 N.C. App. 247, 249, 298 S.E.2d 740, 742, *appeal dismissed and disc. rev. denied*, 308 N.C. 192, 302 S.E.2d 245 (1983)).

Nonetheless, the court stated that "[t]he crucial fact distinguishing this case . . . relates to law enforcement officers' knowledge about the ownership and control of the vehicle." *Id.* at \_\_\_, 774 S.E.2d at 899. On that basis, and in reliance on the United States Supreme Court's decision in *Ybarra v. Illinois*, the Court of Appeals concluded that the search of the rental car exceeded the scope of the warrant issued for Turner's residence and that the evidence seized from the car should have been suppressed.[1] *Id.* at \_\_\_, 774 S.E.2d at 899-901.

Finally, the Court of Appeals noted that that the record did not make clear which portion of contraband attributable to defendant was found in the home as opposed to the rental car, and therefore which portion of contraband was subject to suppression. *Id.* at \_\_\_, 774 S.E.2d at 901. Accordingly, the court reversed the trial court's denial of defendant's motion to suppress evidence obtained from the vehicle and remanded with instructions to determine which portion of the contraband attributable to defendant was seized from the home.[2] *Id.* at \_\_\_, 774 S.E.2d at 901. Defendant and the State both filed petitions for discretionary review on 25 August and 8 September 2015, respectively. We allowed both petitions on 28 January 2016.

---

[1] The Court of Appeals also rejected an argument by the State that the evidence seized from the rental car should be admissible under the "good faith exception" to the exclusionary rule. *Lowe*, \_\_\_ N.C. App. at \_\_\_, 774 S.E.2d at 901. The court held that the exception did not apply because the error lay with the police executing the warrant, not with the warrant itself. *Id.* at \_\_\_, 774 S.E.2d at 901. The State has abandoned this argument on review here.

[2] Because we are reversing the suppression of items from the vehicle, this determination is no longer necessary.

## I.   Probable Cause

Here defendant again contends that the search warrant was not supported by probable cause, and therefore, any evidence seized in the ensuing search should have been suppressed.  We do not agree.

The United States and North Carolina Constitutions both protect against unreasonable searches and seizures of private property.  U.S. Const. amend. IV; N.C. Const. art. I, § 20.  The Fourth Amendment to the United States Constitution provides that "no warrants shall issue but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV.  In addressing whether a search warrant is supported by probable cause, we employ the "totality of the circumstances" test, under which we must determine "whether the evidence as a whole provides a substantial basis for concluding that probable cause exists." *State v. Beam*, 325 N.C. 217, 221, 381 S.E.2d 327, 329 (1989).  "The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Biber*, 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011) (citing *State v. Brooks*, 337 N.C. 132, 140-41, 446 S.E.2d 579, 585 (1994)).

Defendant asserts that this case is analogous to *State v. Benters*, in which we held that a lack of sufficient independent corroboration precluded a finding of

probable cause. 367 N.C. 660, 673, 766 S.E.2d 593, 603 (2014). We conclude, as did the Court of Appeals, that defendant's reliance upon *Benters* is misplaced.

In *Benters*, we addressed the probable cause determination in a case involving an anonymous tip, as opposed to a case in which a tip is received from a confidential informant, and we stated, "An anonymous tip, standing alone, is rarely sufficient, but 'the tip combined with corroboration by the police could show indicia of reliability that would be sufficient to [pass constitutional muster].' " *Id.* at 666, 766 S.E.2d at 598-99 (brackets in original) (quoting *State v. Hughes*, 353 N.C. 200, 205, 539 S.E.2d 625, 629 (2000)). The anonymous tip in *Benters* was that the defendant was growing marijuana. *Id.* at 661-62, 669, 766 S.E.2d at 596, 600. The corroborating evidence proffered by the police consisted of: (1) utility records of power consumption for the target residence; (2) gardening equipment observed at the target residence (coupled with the apparent absence of significant gardening activity); and (3) the investigating officer's expertise and knowledge of the defendant. *Id.* at 661-62, 669, 766 S.E.2d at 596, 600-01. We held that these allegations were not "sufficiently corroborative of the anonymous tip or otherwise sufficient to establish probable cause." *Id.* at 673, 766 S.E.2d at 603.

The distinctions between the two cases are apparent. Here the anonymous tip was that Michael Turner was "selling, *using* and *storing* narcotics at" his house. Detective Barber's affidavit in support of the warrant listed his training and experience, as well as Michael Turner's history of drug-related arrests, and stated

that Detective Barber had discovered marijuana residue in trash from Michael Turner's residence, along with correspondence addressed to Michael Turner. As the Court of Appeals stated, "Although there were many reasons the gardening equipment may have been outside the defendant's house in *Benters,* the presence of marijuana residue in defendant's trash offers far fewer innocent explanations." *Lowe,* ___ N.C. App. at ___, 774 S.E.2d at 898. Furthermore, in the description of crimes for which evidence was sought, Detective Barber listed possession of controlled substances in violation of N.C.G.S. § 90-95 in the affidavit. Thus, unlike in *Benters*, the affidavit presented the magistrate with "direct evidence of the crime for which the officers sought to collect evidence." *Id.* at ___, 774 S.E.2d at 898; *see also State v. Williams*, 149 N.C. App. 795, 798-99, 561 S.E.2d 925, 927 ("[A] residue quantity of a controlled substance, despite its not being weighed, is sufficient to convict a defendant of possession of the controlled substance . . . ."), *disc. rev. denied*, 355 N.C. 757, 566 S.E.2d 481, *cert. denied*, 537 U.S. 1035, 1235 S. Ct. 553, 154 L. Ed. 2d. 455 (2002).

Accordingly, we agree with the Court of Appeals and hold that under the totality of the circumstances there was a substantial basis for the issuing magistrate to conclude that probable cause existed.

## II. Search of the Vehicle

The State argues that the Court of Appeals erred in holding that the rental car parked in the curtilage of the residence could not be searched pursuant to the

warrant. We conclude that the search of the vehicle here was within the permissible scope of the search conducted under the valid warrant.

The authorized scope of a valid warrant can depend upon the nature of the object of the search because "[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Ross*, 456 U.S. 798, 820-21, 102 S. Ct. 2157, 2170-71, 72 L. Ed. 2d 572, 591 (1982). "Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marihuana would also authorize the opening of packages found inside." *Id.* at 821, 102 S. Ct. at 2171, 72 L. Ed. 2d at 591.

We previously addressed the scope of a search warrant with regard to vehicles in *State v. Reid*, in which we held:

> The authority to search described premises would include personal property located thereon. Authority to search a house gives officers the right to search cabinets, bureau drawers, trunks, and suitcases therein, though they were not described. *"It has been held that if a search warrant validly describes the premises to be searched, a car on the premises may be searched even though the warrant contains no description of the car."*

286 N.C. 323, 326, 210 S.E.2d 422, 424 (1974) (emphasis added) (citations omitted). In the case of a private residence, "the premises" by necessity encompasses the

curtilage of the home. This is because "the curtilage is the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life,' and therefore has been considered part of the home itself for Fourth Amendment purposes." *Oliver v. United States*, 466 U.S. 170, 180, 104 S. Ct. 1735, 1742, 80 L. Ed. 2d 214, 225 (1984) (quoting *Boyd v. United States*, 116 U.S. 616, 630, 6 S. Ct. 524, 532, 29 L. Ed. 746, 751 (1886)); *see also Courtright,* 60 N.C. App. at 250, 298 S.E.2d at 742 (explaining that the curtilage "is an area within which the owner or possessor assumes the responsibilities and pleasures of ownership or possession").

Here Detective Barber obtained a valid search warrant based on probable cause for 529 Ashebrook Drive authorizing the search of "premises, vehicle, person and other place or item described in the application for the property and person in question." It is undisputed that when Detective Barber and other officers arrived at the target residence to execute the warrant, the rental car parked in the driveway was within the curtilage of the home. The nature of the items to be seized (including, *inter alia,* controlled substances, drug paraphernalia, and any evidence relating to the use or sale of controlled substances) was such that the items could be easily stored in a vehicle. Because the rental car was within the curtilage of the residence targeted by the search warrant, and because the rental car was a proper place "in which the object of the search may be found," we conclude that the search of the rental car was authorized by the warrant. *Ross*, 456 U.S. at 820, 102 S. Ct. at 2170, 72 L. Ed. 2d at 591. Accordingly, we hold that the search of the rental car did not exceed the scope

of the warrant and that the trial court properly denied defendant's motion to suppress.

In departing from the general rule of *Reid*, the Court of Appeals erred. The court determined that "law enforcement officers' knowledge about the ownership and control of the vehicle" constituted a "crucial fact distinguishing this case" from *Reid* and its progeny. *Lowe*, ___ N.C. App. at ___, 774 S.E.2d at 899. As an initial matter, it is unclear from the record precisely what knowledge about the ownership and control of the vehicle the officers acquired, as well as when and how they acquired it. The trial court entered no written findings of fact or conclusions of law, although the trial judge did make oral findings at the time of his rulings. The sole witness to testify, Detective Barber, gave sparing and possibly contradictory testimony on the subject.[3] Nonetheless, regardless of whether the officers knew the car was a rental, we hold that the search was within the scope of the warrant.

The Court of Appeals, noting that that our appellate courts had not yet addressed the specific issue here, namely whether "a vehicle rented and operated by an overnight guest at a residence described in a search warrant may be validly

---

[3] Detective Barber testified that "once we entered the house on the search warrant, we were able to determine that that vehicle was being operated by [defendant] and Ms. Doctors." Yet, he later testified that the vehicle was registered to "Hertz Rental," and that the information he obtained from defendant and Ms. Doctors regarding the operation and rental of the vehicle was obtained during interviews "at the police station," at which point "the vehicle in the driveway had already been searched." As a result, it is unclear if the officers obtained information about the rental car prior to the search of the car, and if so, whether it was obtained verbally from the individuals in the residence.

searched under the scope of that warrant," *id.* at ___, 774 S.E.2d at 899-900, looked to cases addressing the somewhat analogous situation of a search of an individual present at a premises described in a warrant. To that end, the court relied on the seminal case of *Ybarra v. Illinois*, in which the Supreme Court held that when officers obtained a warrant to search a tavern at which the defendant happened to be a patron, the search of the defendant, in the absence of additional facts, was unconstitutional. 444 U.S. 85, 88-92, 100 S. Ct. 338, 340-43, 62 L. Ed. 2d 238, 243-46 (1979). There the Court held that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. . . . The Fourth and Fourteenth Amendments protect the 'legitimate expectations of privacy' of persons, not places." *Id.* at 91, 100 S. Ct. at 342, 62 L. Ed. 2d at 245 (citations omitted). Applying the reasoning of *Ybarra* here, the Court of Appeals was persuaded "that a warrant authorizing the search of a house or business does not automatically cover the search of a vehicle owned, operated, or controlled by a stranger to the investigation." *Lowe*, ___ N.C. App. at ___, 774 S.E.2d at 900 (citations omitted). On that basis, and in light of the knowledge purportedly acquired by the officers about the vehicle, the court concluded that the search of the rental car exceeded the scope of the search warrant. *Id.* at ___, 774 S.E.2d at 899-901.

The reasoning proffered by the Court in *Ybarra*, sound as it is in the context of a search of an individual present at a tavern open to the public, is not similarly

applicable to the search of a vehicle on the premises of a private residence that is the target of a warrant. The owner or possessor of a premises cannot exercise possession, control, or dominion over an individual located on the premises in the same manner that he can do so over items of personal property, such as a vehicle. The two are inherently different and carry with them separate privacy considerations. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 555, 98 S. Ct. 1970, 1976, 56 L. Ed. 2d 525, 535 (1978) ("Search warrants are not directed at persons; they authorize the search of 'place[s]' and the seizure of 'things,' . . . ." (brackets in original) (quoting *United States v. Kahn*, 415 U.S. 143, 155 n.15, 94 S. Ct. 977, 984 n.15, 39 L. Ed. 2d 225, 237 n.15 (1974))); *Ybarra*, 444 U.S. at 91, 100 S. Ct. at 342, 62 L. Ed. 2d at 245 ("[A] search or seizure of a person must be supported by probable cause particularized with respect to that person. . . . The Fourth and Fourteenth Amendments protect the 'legitimate expectations of privacy' of persons, not places."). Moreover, a commercial patron at a tavern open to the public can, in the absence of additional facts, be fairly characterized as being in "mere propinquity" to the suspected criminal activity targeted by the warrant. *Ybarra*, 444 U.S. at 91, 100 S. Ct. at 342, 62 L. Ed. 2d at 245. But, the same cannot be said of personal property, like a vehicle located within a dwelling's curtilage, over which the "owner or possessor assumes the responsibilities and pleasures of ownership or possession," and which has presumably been permitted, if not invited, onto the premises. *Courtright,* 60 N.C. App. at 250, 298 S.E.2d at 742. Accordingly, we conclude that *Ybarra* is inapposite.

Moreover, the Court of Appeals erred in construing the officers' purported knowledge of the rental car as support for a conclusion that the car was unrelated to the target of the search warrant. To the contrary, defendant was not on the premises by accident, but rather was an overnight guest at a residence targeted for suspected drug trafficking. The officers were informed about defendant's operation of the rental car only after they entered the home, in which they discovered defendant, along with 853 grams of marijuana, as well as 14 grams of crushed MDMA in the room that defendant had been occupying. Far from establishing that defendant was "a stranger to the investigation," *Lowe*, ___ N.C. App. at ___, 774 S.E.2d at 900, the officers' knowledge of the rental car only served to further connect the car to the suspected criminal activity targeted by the warrant. Accordingly, we reverse the Court of Appeals' holding that the search of the rental car exceeded the scope of the warrant.

For the reasons stated herein, we affirm in part and reverse in part the decision of the Court of Appeals.

AFFIRMED IN PART; REVERSED IN PART.